So on the first case it's Abdel Fattah Ellawendy 22 versus Jason Takagaki and the Department of the Army 22-16980. And I know on the calendar that we're going to have two people arguing for the petitioner. And I note that you're splitting your time. And so that means you each are taking five minutes and that your time, if you're going to reserve any rebuttal time, it's within that five minutes. And then the department has ten minutes total. So, and I say this and I'm not saying to this to because you're students, I say this to everyone that's splitting time. When you're the second person sitting there, and that looks like Mr. Collins there, but when you're splitting time, and I know, and it's not uncommon for people to split time, and the court's asking questions of the first person and you see the clock tick, tick, tick, tick, and you're thinking like, they're taking all my time. I've prepared for this and then what do I do? Do I go leap up here and pull Ms. Moore down or whatever? I promise you, if you are the second person arguing, if we take more time with the first person, you still get your time. All right? Because that's time that the court has allotted because we need to have those questions answered so that we can do this. I know also, so we have two certified law students, is my understanding, and it looks like we have a supervisor here. I want to make sure because that's important. And so is that Mr. Brown? That's correct, Your Honor. So you're supervising them, so it's legal for them to argue in front of us, correct? Yes. Are you the supervisor of the clinic or? No, Mr. Kelman is here, Jeffrey Kelman, he's the supervisor of the clinic. Okay, but you're supervising the law students that are arguing? I am, Your Honor. All right, well thank you. Okay, so we're ready on the first case, and so please, I note that it looks like Ms. Moore has come to the podium, but please state your name and who you're appearing for, and you have five minutes. Good morning. Good morning, Your Honors, and may it please the court, Amelia Moore, certified law student on behalf of Appellant Abdel Fattah Elwendy, being supervised by Professors Anthony Brown and Jeffrey Kelman. Your Honor, the goal for today is for me to argue the first five minutes primarily on the first step of the Abassi factors regarding whether or not this case rises in a new context, and my co-counsel to argue the second step, and we would like to reserve one minute of Mr. Collins' time for rebuttal. All right, so you plan to use your total five? Yes. All right, you can proceed. Your Honors, we're here for one primary reason today, and that is because the district court failed to apply the correct analytical framework when determining whether or not to recognize Mr. Elwendy's Bivens claim. Had it done so, it would have found that Mr. Elwendy's claim arises in the same context as Bivens because there are no meaningful differences between his claim and Bivens. A meaningful difference is one that implicates separation of powers concerns, and the court in Abassi was clear about this. They said that separation of powers principles should be central to the analysis, and so what the court did there is they identified a number of different ways in which a claim might differ such that it would require the judiciary to impede into the functioning of either the executive branch or Congress more than the court did in Bivens. Isn't it a meaningful difference that in this case it's an Army police officer, and in Bivens it was a Bureau of, a Federal Bureau of Narcotics officer? Your Honor, it's, of course there's- It seems pretty close to Bivens. Right. Of course there is a military aspect to this case, but with an application of the Abassi factors, this demonstrates that this military aspect of the case doesn't render the claim meaningfully different. And I say this for two primary reasons. One, because Mr. Elwendy was not a service member, and under the Supreme Court's Bivens jurisprudence, in which they've looked at Bivens in the context of the military, there's only been a categorical bar on claims against service, brought by service members in two contexts, under Chappell against commanding officers, and in Stanley for injuries arising out of incident, or incident to service. And so that cortical categorical ban doesn't apply to Bivens. So, but your, your client is, I just want you to, I want to be sure I have the facts. He's-  He, the Presidio of Monterey Police Department officers are employed by the Army and have jurisdiction on the military installation. Is that correct? Yes, Your Honor. So if that is true, how can we as judges predict the system-wide consequences of recognizing a cause of action under Bivens for Fourth Amendment violations by police officers on military installations? So we're talking about Egbert. Yes, Your Honor. The, one of the primary aspects of this is that the military context of this case doesn't impede into the functioning of the, or it wouldn't require the judiciary to second-guess or impede into the functioning of the military. And that's because it's a very isolated portion of the claim. The Fourth Amendment violation took place at Mr. Allewendy's personal apartment. It was a seizure of his personal laptop. And again, he's bringing a claim against only a low-level federal investigator. And so when you compare this to a number of cases where the military context was implicated, you see that the claimant there was bringing a claim against high-level executive officers. Well, Mr. Bivens, well in the Bivens case, he was low-level too. Right, Your Honor. But in that, and exactly, that it, these, the claim is identical there to Bivens then. And this can be, this demonstrates why when the district court should have applied the Abbasi factors, it shows that because it was identical to Bivens and the fact that he, they were both low-level investigative officers, that it doesn't require the judiciary to impede any more than Bivens did. Well, I have a question about some cases, and it might be for your co-counsel, so if you can, you can toss it down the road and you can get ready for it, but in three recent cases, Mejia versus Miller, and Pettibone versus Russell, and Sheik versus DHS, on the Ninth Circuit, we have found the availability of an OIG process to be a special factor that counsels against recognizing a Bivens claim. Why isn't that the same here? Is that you, or is that him? I, we're both prepared to answer questions regarding any topic, so I'm happy to address that. So the reason that the Inspector General claim is not an alternative remedy, which would foreclose Bivens, is primarily because through AR 27-20, the Army acted to preserve the availability of a Bivens claim for claimants. And so in AR 27-20, it states that constitutional torts may not be cognizable under any provision, and then it directs claimants to DA pamphlet 27-162, which states that a claim may be brought under Bivens. And so this is similar to LaNuza, in the fact that- So you're relying on that Army pamphlet? Yes. To argue that the Army has expressly allowed Bivens actions? Is that your best authority? Yes, Your Honor, and that is because, although expressly allowed, the words may states that they have preserved the availability of a claim. And the Department of the Army was delegated the power by Congress to create regulations through the Army, and they created the Army Claim System, and those claim systems is how the Department of the Army deals with certain claims brought by its employees. And so this is a federal regulation, and although this is a DA pamphlet, it is directly referenced and- You're saying that the pamphlet is a federal regulation? No, Your Honor, AR 27-20, the Army Claim System, is a federal regulation, but it directly is referenced in that subsection. Okay, we've taken you over time. Okay, thank you. But that's not your fault. That's what we wanted to ask the question. Let me find out if my colleagues have any additional questions. I actually did. Okay, go ahead. Ms. Moore, thank you so much. So it's my understanding that Mr. Ella Wendy did file grievances with various entities. Isn't that an alternative remedial structure, like what was presented in Egbert? What Egbert specifically says is that the inquiry there is whether or not, when an alternative remedy is presented, if the executive branch or Congress finds that alternative remedy sufficient to secure an adequate level of deterrence, then it's not the job of the judiciary to second-guess that by imposing a Bivens remedy. But there's nothing in that case that specifically states that it needs to be the only remedy. And so in Egbert, although they created the grievance process and the IG complaint process, they didn't otherwise act to preserve the availability of a Bivens remedy. Here, the Department of the Army created the complaint to the commanding officer through AR-15-6 and the IG process, but they otherwise acted by including that language in AR-27-20 to preserve that availability. And this is similar to LaNuza in the fact that there, Congress included language in the— So you're not disputing that the alternative remedies were available and, in fact, your client availed himself of those alternative remedies. You're saying that we can really overlook that part of the Egbert analysis because we have this other manual that expressly reserves the right to a Bivens action. Yes, Your Honor. And this can be demonstrated through LaNuza in where the court there recognized that language in the INA, which stated that for the purpose of civil torts and disputes, federal and state officials would be considered to be acting under the color of the law. They determined that language expressly retained the availability of a Bivens action, even though the defendant there was criminally prosecuted. And so that would demonstrate that Congress did not find that other remedy sufficient to secure an adequate level of deterrence, so they reserved this ability to bring a Bivens claim. Thank you. Thank you. All right. All right. I think I'm going to feel self-conscious about we've already had one lawyer in the hospital. Now you're here on crutches, so can you tell me that's not our fault? It's not your fault, Your Honor. I was already in the hospital. Oh. Okay. Well, are you in good shape to argue today? I am, yes. All right. Well, please state your name and appearance for the record. Good morning, Your Honors. It may please the Court. Bradley Collins on behalf of Mr. Elowendy. So go ahead. Well, I just wanted to circle back to a couple of questions that have already been asked about the best authority for our argument and whether our position requires the Court to overlook the Egbert analysis. Our analysis is actually consistent with Egbert. Egbert states that the Court should not second-guess the alternative remedial structures that an executive agency has created. And in this case, the Army has created alternative remedial structures that are not exclusive of pittance remedies. They state very clearly in the regulations that my co-counsel was referencing, suits alleging violation of constitutional rights may be brought against U.S. employees individually, and then they name Bivens. That's incredibly more clear than Linusa v. Love, and it's a – Now, sir, are you referencing the pamphlet right now? Yes, Your Honor, the pamphlet. Well, I have a little – I'm going to push back on you a bit here, and I have a little difficulty with the – I guess the imprimatur that you're giving the pamphlet, that you rely on a reference to Bivens in the Army pamphlet to argue that Army has expressly allowed Bivens' actions, okay. But why should we read the pamphlet in the way that you're asking, rather than as a general statement that people can sue the federal officials under Bivens, which is true, but you're basically citing it to say that this – to give the imprimatur to this particular lawsuit. I think you're over-reading the pamphlet, so tell me why I'm wrong. All we're saying, Your Honor, is that the DA pamphlet indicates that the Army does not intend to foreclose Bivens' claims. And I think it's clear if you continue reading the regulation, the very next paragraph talks about defenses to Bivens' claims, like qualified immunity, and then the paragraph after that actually incorporates the incident-to-service analysis into Army regulations, and they explain like we've explained in our brief, that it's a two-step process barring claims brought by service members from activity incident-to-service. That's paragraph 2-37 in both Army Regulation 27-20 and DA pamphlet 27-162. So that shows that not only did the Army intend for – or, sorry, recognize Bivens, but they also recognize when certain Bivens' claims should not move forward and when others should. And Mr. Allewendy's case is one of those that should move forward because his claim does not arise from activity incident-to-service because he's not a service member. Okay, go ahead. I guess I'd like to direct the court to a case, McGowan v. Scoggins, where the Supreme Court applied this incident-to-service – sorry, this court applied the incident-to-service test in the context of a civilian bringing a claim against the Army. Are you putting that forth as that's your best case for the proposition that you're asking the court to agree with? Well, our best case is Linus v. Love, where this court explained that – Well, why isn't your best case Saucier v. Katz, where the Supreme Court recognized Bivens' action against a military police officer? I agree that that's a very strong case in our favor, Your Honor. However, the issue with that case is that the Supreme Court did not weigh in on the Bivens' issue explicitly. It was dismissed. But if it found that the qualified immunity applied and didn't expressly say that Bivens' action wasn't permitted, can't we imply or assume that the court implicitly was commenting on the permissibility of the Bivens' action in that case? I do agree with that analysis, Your Honor. And also, this case has done the same thing in Morgan v. United States, where actually a very similar plaintiff to Mr. Allewendy, he was a civilian employee of the FAA working on an Air Force base, and this court resolved the question of qualified immunity without weighing in on the Bivens' issue, even though it was a Bivens' claim, which, yes, and in my view, and this court has held explicitly, that acknowledging the Bivens' claim is a prerequisite to qualified immunity. So yes, both Saussure v. Katz and Morgan v. United States indicate that the military context alone is not sufficient to foreclose the Bivens' claim. There's more to it. And because our claim does not arise incident to service, it shouldn't have been dismissed. Any additional questions from counsel? Okay, we've used all of your time, but I'll give you a minute for rebuttal. Thank you, Your Honor. Good morning. Good morning, Your Honors. May it please the Court, my name is Valerie Smith, and I represent Defendants' Appellees on this matter. Your Honors, the Court should affirm the District Court's decision dismissing the Second Amendment complaint, finding that Bivens has never been recognized in the military DOD context. Did you say the Second Amendment? Second Amended Complaint. Oh, the Second Amended. Okay, I was going to say it. Hot topic, though. I'm in the wrong case. Okay, it's the Fourth Amendment case, right? Correct. Yes. You are correct. Okay. Sorry. On the Second Amended Complaint, Your Honors. Okay. Of the conduct that Ella Wendy alleged in the pleadings, any further amendment would be futile. The military DOD throw line in Ella Wendy's claim is something that is not found in Bivens. And Officer Takagaki represents a new category of defendant, which raises this case in a new context. So, what is the scope of the Presidio of Monterey Police Department's authority, and what's its function? Is it the same as a regular police department, except that its officers are employed by the Army and have jurisdiction on a military installation, or are there other differences? And does the Presidio of Monterey Police Department have jurisdiction at Ella Wendy's apartment where the alleged seizure took place? What's pled in the complaint is no information as to where Ella Wendy's apartment is specifically located, but in regards to the Presidio of Monterey Police Department, they are specifically assigned to that Army garrison, and so they do have the ability to essentially enforce laws on the Army garrison, which includes the Defense Language Institute, where Ella Wendy was employed at the time. And so, let's assume that we find that Ella Wendy's claim does not arise in a new context. Is that the end of the inquiry? Does Egbert require more? I'm, you know, perhaps I'm the only person who feels this way, but I don't think that the Supreme Court's enunciation of the test is all that clear, and so I'm trying to understand sort of whether there is, in fact, a one-step inquiry, a two-step inquiry. What are we to do if we were to find that this does not arise in a new context? Yeah. Well, I think that the fact that Egbert has stated that recognizing a Bivens remedy in any situation is an extraordinary act that places great stress on the separation of powers, and so it is something, given the fact that there has not been a Supreme Court case recognizing a Bivens case in the military DOD context, that in and of itself is sufficient to pass the new context requirement and get us to the fact that the alternative remedies, the special factors analysis, also specifically speaks to the military DOD context. I think Stanley speaks very well to that issue when it talks about Chappell and explaining that even Chappell, even though what was before the court in Chappell was only supervisor, supervisee, and bringing claims against supervisors, Stanley goes even further to say, we're – that's what was before us. But that doesn't mean that this is the only way that we can preclude a Bivens action. It actually goes further, and so it extends it to the military context. Counsel, can I get some clarification, please? So I'm not sure if I'm understanding you correctly. Do you think that the Supreme Court in Egbert has implicitly eliminated Bivens, except if it exactly mirrors the facts in Bivens, Carlson, and Davis? Without saying it, they say it. Specifically in Egbert, in the summer of 2022, the Supreme Court said that even if called to decide Bivens today, the court would decline to discover any implicit cause of action in the Constitution. I think that in and of itself is a very strong statement, that the facts have to be almost completely analogous. They've even also said – Well, the difference is on life support, but it's not – I don't think it's dead. I hear you on that one, Your Honor. But they've also gone further as to say that just because it is the same claim, the same amendment being challenged, even in almost parallel situations, it may not be enough to satisfy Bivens. And so the new context inquiry, they said in Hernandez and Bothabasi, that the new context inquiry is easily satisfied. I think that tip right there is, okay, we've got something that's different, it's new context is satisfied, let's move on to the special factors analysis. Here we – not only do we have the military DOD thorough line, but we have factual differences. What are those? Yeah. So this incident actually arose out of an employment dispute. Well, can you point me to a case finding the EEOC process to be an alternative remedial structure for a proposed Fourth Amendment claim? At this point, I have not found one, Your Honor. I don't have one readily available to the court, but I do have multiple cases finding that the inspector general's ability to investigate and discipline be sufficient as an alternate remedy. And we have multiple venues, not just with the inspector generals, but also with army regulations. No, I – so I put the pressure point on the weakness of your argument right there. But then you said, but that doesn't matter because? I have multiple other alternate remedies. Okay. And as far as specifically addressing a Fourth Amendment claim, the court has said that it doesn't have to specifically address the Fourth Amendment claim. When it comes to the special factors analysis, in Egbert, the court said that it's irrelevant that the constitutional wrong would otherwise go unredressed absent a Bivens remedy or that existing remedies do not complete – provide complete relief. So that in and of itself, even if there's relief to seek, relief that addresses the deterrent effect, such as discipline and investigation, that should be sufficient to satisfy the special factors inquiry. Well, help me out here just from the standpoint, since there seems to be – I think that Judge Desai mentioned, and there seems to be a little, perhaps, lack of clarity on whether it's a one- or a two-step or after that it now is a one-step or whatever. But let's assume that we don't know with certainty. What is your proposed analysis in this case so that – and if the court were – and I'm saying this hypothetically – if the court were to affirm in a way that it wouldn't make a difference whether it's one- or two-step? Yeah. Your Honor, both in Egbert and Abbasi, Egbert, page 1805, the court says that only really one question needs to be answered, that element one and element two really merge into one question, and that's whether there's any rational reason, even one, to think that Congress is better suited to weigh the costs and benefits of allowing a damages action like the one alleged here and whether that should be allowed to proceed. So really it's one question, and because here we do have the military context, Congress has delegated that to the executive. It's in the Constitution that Congress has the authority to delegate that, and Stanley does specifically speak to that analysis as well. So what you're saying is the answer to that question, that's the question we should answer, and that's – and the answer to that question and the reasoning to that why you win is? Because this case does arise in the military context. It arises on the military workplace after Mr. Elowendy made a report to the Presidio Police, the Army garrison there. They were investigating that complaint. As part of that investigation, he was ultimately terminated. And actually, plaintiff brings this up as his own relation to the workplace when he filed the EEOC complaint. In SER 47 and 48, you actually have the EEOC's analysis of the taking of the computer and then finding that not wrongful. So he himself brings this as a workplace complaint and issue. So he's not been – he doesn't have criminal charges against him. This is simply an employment case. Within the four corners of the complaint, it does not say anything about criminal charges being brought against him. So I am hesitant to speak beyond the four corners of this complaint since this is a motion to dismiss. But I do have additional information regarding that, if Your Honor is interested. Okay. Any additional questions? Okay. Well, Your Honors, I thank you very much for your time. If there's no additional questions, we ask the court to not expand Bivens in this context and to affirm the district court's dismissal of this action. Thank you very much. Thank you for your argument. All right, rebuttal. One minute. Your Honor, I just wanted to make two related points. First, to address Justice Desai's first question about – Just been promoted. I'm sorry. Oh, yeah. Judge Desai. You have to – on the – there is no justice on the Ninth Circuit. That's what my position goes. All I have to – so I was a justice on the Third DCA before I was demoted to a judge on the Ninth Circuit. So we always – we always appreciate the promotion. So that – the Bivens analysis is – you're right, it's not all that clear. But it's guided by one question. Whether the claim at hand requires more judicial intrusion into an executive branch or an executive agency than Bivens did. And my second point is that here it does not. That's because as a counsel for Officer Takagaki concedes, Congress delegated the authority over Bivens claims within the military context to the Army. And that's why Army regulations control. And that's why when we look at D.A. pamphlet 27-162 and read what it says, it's clear that Mr. Elawendy's claim should not have been dismissed because the Army did not intend to stand in the way of Bivens' claims. All right. Thank you for your argument. Thank you both for your arguments. Very helpful in this matter. And this matter will stand submitted. And I think that I – well, you were actually the first to argue today, which is always the hardest place. But I will say that both when you graduate you'll be – you're welcome to argue in front of the Ninth Circuit. You all did – you did a good job. And, of course, I know, Ms. Smith, you've been around a long time, and you did a good job. Not as long as I've been around, so I'm not saying that. Thank you.
judges: CALLAHAN, DESAI, ALBA